UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONID MARMELSHTEIN and ARLENE MARMELSHTEIN,

        Plaintiffs,

v.

CITY OF SOUTHFIELD, OFFICER SWART, SGT. LASK, OFFICER JEFFREY JAGIELSKI, JOHN DOE (Badge #112), DET. BAUMAN, SGT. SIMERLY, SGT. MORRIS, DET. LITERACKI, DET. MOILANEN, and OFFICER MEDICI,

        Defendants.

Case No. 07-15063
Honorable Julian Abele Cook, Jr.
Magistrate Judge Mona K. Majzoub

ORDER

On November 28, 2007, the Plaintiffs, Leonid Marmelshtein and Arlene Marmelshtein,[1] filed a complaint with this Court in which they jointly contended that their fundamental constitutional rights had been violated by the Defendants[2] during the execution of a search warrant of their home.

I.

During the early evening hours (approximately 6:30 p.m.) on December 13, 2004, the

---

[1] The Plaintiff's son, Marc Marmelshtein, who had been a party to this litigation, was dismissed by the Court as the result of an agreement among the parties.

[2] The Defendants have been identified in this action as the City of Southfield, Michigan and ten members of its police department.

1

Defendants, acting with the authority of a search warrant, entered the Plaintiffs' home in Southfield, Michigan in search of illicit narcotics. However, the parties sharply disagree about those events of December 13th. It is the Plaintiffs' contention that the Defendants used grossly excessive force during the execution of a search warrant of their home as exemplified by, *inter alia*, the unwarranted use of "flash-bang" grenades. They contend that the front door of their home was broken down by the Defendants with a battering ram without initially announcing their presence. However, Leonid Marmelshtein does acknowledge that he heard a loud noise from the first of two "flash-bang" grenades.[3] His wife, Arlene Marmelshtein, after hearing some heretofore unidentified persons enter the front door of their home, fled through the rear door in fear of her safety. She maintains that her flight from the house ended upon the realization that the intruders were law enforcement officers who, thereafter, detained and placed her in handcuffs.

In their pleading documents, the Defendants deny any unwarranted encroachment upon the Plaintiffs' civil liberties, pointing out that their execution of the now-challenged search warrant was based upon an anonymous tip from a neighbor who had complained of "narcotics-type activity" in or around the Marmelshtein's home (i.e., a parked vehicle in their driveway with a license plate that had been issued to an individual with a misdemeanor conviction for the possession of marijuana, as well as the presence of a small amount of marijuana residue in their trash can). Acting upon this "tip," the Defendants, after having obtained a search warrant, submit that they approached the Plaintiffs' home, knocked on the front door, and contemporaneously identified themselves as the

---

[3]The issue of Leonid Marmelshtein's injuries is also in dispute. The Defendants contend that he - a 69-year-old with a slight build (five feet seven inches in height and approximately one hundred forty pounds in weight) - charged at them upon their entry into his home "with his fists up in the air." Further, they theorize that any claims of injuries by him were self induced when he attempt to leave the house.

law enforcement officers. They contend that, after waiting for approximately five to ten seconds and dressed in black hoods, they knocked down the front door and entered the Plaintiff's home after discharging two "flash bang" grenades.[4]

Thereafter, the Plaintiffs' home was searched by the Defendants who found 0.16 grams of marijuana on the dresser in their son's bedroom. Leonid Marmelshtein was arrested and charged with (1) resisting and obstructing a police officer, (2) assaulting a police officer, (3) disorderly conduct, and (4) criminal jostling. After being charged with these criminal offenses and bound over for trial, he entered a plea of no contest to the charge of disorderly conduct. The other three charges were dismissed with prejudice.

On November 28, 2007, the Plaintiffs filed a complaint in which they alleged that the Defendants had utilized excessive force (as to Leonid Marmelshtein only), employed an unreasonable execution of a search warrant, made an unlawful entry into their home, and committed an unreasonable search and seizure. They also made a *Monell*[5] claim against the City of Southfield only.[6] The Defendants' motions for summary judgment are now before the Court for its resolution.

II.

The purpose of a summary judgment "is to isolate and dispose of factually unsupported

---

[4] A "flash-bang" grenade is a diversionary device which is designed to emit a brilliant light and a loud noise upon detonation. Its ostensible purpose is to stun, disorient, and temporarily blind its targets and, thereby, create a window of time that will enable law enforcement personnel to safely enter and secure a potentially dangerous targeted area.

[5] *Monell v Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

[6] In their complaint, the Plaintiffs had also registered claims of false arrest and malicious prosecution on behalf of Leonid Marmelshtein only. However, on March 11, 2009, the Court disagreed with their positions on these two issues and, in so doing, granted the Defendants' request for the entry of a judgment on the pleadings. (Docket #41)

3

claims or defenses." *Celotex Corp. v. Citrate*, 477 U.S. 317, 323-24 (1986). When deciding a motion for summary judgment, a court must consider any pleadings and discovery material on file in a light that is most favorable to the nonmovant. Fed. R. Civ. P. 56 (c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991). Therefore, the moving party bears the burden of showing the absence of any genuine issue of a material fact. *Id.* at 323.

A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Evidence that "is merely colorable, or is not significantly probative" is not sufficient to rebut summary judgment. *Id.* at 249-250. Thus, the entry of a summary judgment is appropriate where (1) the evidence offered in support of a motion is so overwhelming that the proponent must prevail as a matter of law, or (2) the opponent fails to rebut the dispositive motion with evidence which establishes a question of a material fact that is of consequence to the case. *Id.* at 252; *Celotex*, 477 U.S. at 322.

A.

Although the Defendants do not dispute that there are genuine issues of a material fact in dispute in this lawsuit, they contend that the Plaintiffs' claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) because, in their opinion, Leonid Marmelshtein's plea to disorderly conduct is inextricably intertwined with his excessive force claim. The Defendants also submit that the Plaintiffs' claims in this litigation are barred by the doctrine of qualified immunity because their deployment of the "flash bang" grenades is not a violation of a clearly-established constitutional right.

4

Likewise, the Defendants claim that inasmuch as the individual police officers are not legally responsible for the Plaintiffs claims under 42 U.S.C.§ 1983, the City of Southfield is equally free from liability. Further, the Defendants claim that the Plaintiffs have failed to allege a specific policy, custom, or practice which violated their constitutional rights.

The Plaintiffs disagree. They collectively contend that the Defendants' request for the entry of a summary judgment should be rejected because, in their opinion, there are several genuine issues of a material fact as to whether the law enforcement officers unlawfully executed the search warrant and used excessive force during the evening hours of December 13, 2004. The Plaintiffs submit that *Heck* is inapplicable to the facts in this case because a successful claim of excessive force does not necessarily invalidate any element of Leonid Marmelshtein's no contest plea to disorderly conduct.

They also reject the Defendants' argument that the officers are entitled to qualified immunity. The Plaintiffs submit that even if the individual officers are granted qualified immunity, this level of protection does not shield the City of Southfield from liability. Finally, they assert that there exist genuine issues of a material fact regarding whether the City of Southfield maintained policies, customs, and practices which proximately caused the violation of their constitutional rights.

B.

When executing a search warrant, police officers must knock and announce their presence and authority before entering a residence. *Miller v. United States*, 357 U.S. 301 (1958). They must also await the expiration of a reasonable amount of time before physically forcing their way into a residence. *United States v. Pinson*, 321 F.3d 558, 566 (6th Cir. 2003)

5

(citing *United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000)).

In determining whether police officers objectively used reasonable force, the United States Court of Appeals for the Sixth Circuit has declared that some of the most important factors for a court to consider are (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the police and others, and (3) if the suspect actively resisted arrest or attempted to evade arrest through flight. *Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009); *Bing ex rel. Bing v. City of Whitehall*, 456 F.3d 555, 569 (6th Cir. 2006). The use of a "flash-bang" grenade is neither per se reasonable nor per se unreasonable. *United States v. Dawkins*, 83 Fed. App'x. 48, 51 (6th Cir. 2003). Rather, the reasonableness in the use of a "flash-bang" device is based on the facts and circumstances of each case. *Id.*

Here, when the facts are taken in the light that is most favorable to the Plaintiffs, there is a genuine issue of a material fact regarding whether the officers lawfully executed the search warrant. First, there is a genuine issue regarding whether the officers knocked and announced their presence prior to the entry into the Plaintiffs' residence. The Defendants correctly point out that inasmuch as Leonid Marmelshtein did not hear the door being battered down, he - in all likelihood - would not have heard them if they had announced their entrance into his home. Nevertheless, his wife, who did hear the door being battered down, denies having heard the officers knock or announce before entering their home. Therefore, this fact is in dispute.

Second, there is also a genuine issue of a material fact as to whether the officers were unreasonably excessive in their deployment of the two "flash-bang" grenades. In the opinion of the Court, the crime with which the Plaintiffs were suspected of committing (i.e., possession of marijuana) - especially when compared with the other drug related offenses that are so prevalent

6

in today's society - is not severe.

Accepting those facts that are taken in a light that is most favorable to the Plaintiffs, the officers' safety was not a genuine threat to any of them. Moreover, there is no credible evidence in this record that either of the Plaintiffs made an attempt to evade arrest or flee. When these facts are applied to the three factors in *Grawey* and *Bing*, the use of "flash-bang" grenades were, arguably, excessive under the circumstances. Furthermore, if the devices were thrown as a weapon at an individual - as claimed by Arlene Marmelshtein, the use of force is almost certainly excessive.

C.

Here, when the facts are viewed in the light that is most favorable to the Plaintiffs, they have shown genuine issues of a material fact regarding the unlawful execution of the search warrant. Specifically, Leonid Marmelshtein has raised the issue of whether the officers used excessive force against him when he was allegedly struck on the face and head - an assertion which has been denied by the Defendants. Nevertheless and notwithstanding the parties' respective positions over the claimed injuries, Leonid Marmelshtein insists that he did not resist arrest. Therefore, this fact is in dispute.

D.

Approximately fifteen years ago, the Supreme Court declared in *Heck,* 512 U.S. 486-487 (1994) that if a plaintiff brings a civil rights action under 42 U.S.C. § 1983 which would necessarily invalidate a state law conviction, this claim should be dismissed. However, if such a lawsuit does "*not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," it should be allowed to proceed. *Id; Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (emphasis in original). In order to determine whether a § 1983 claim would

have an impact upon the validity of the offense, the Court must look to the claim under this statute and to the specific offenses for which the claimant was convicted. *Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006) (citing *Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003)). The purpose of this standard is to prevent conflicting results which may stem from tort actions that could follow successful criminal convictions. *Heck,* 512 U.S. at 484.

Both parties cite to *Cummings* for support of their respective positions. In *Cummings*, the Sixth Circuit decided that inasmuch as the plaintiff had pled no contest to assault charges rather than asserting the defense of excessive force, the *Heck* doctrine precluded him from bringing an excessive force claim at a later time. *Id.* at 684. Nevertheless, the *Heck* doctrine did not bar the plaintiff from bringing an illegal seizure claim because it was not a defense to the assault charges in the state court action. *Id.* Thus, the court reasoned that a judgment in favor of the plaintiff for illegal seizure would not have carried the implication that his no contest plea to the assault charge was invalid.

Here, the *Heck* doctrine is inapplicable because a favorable judgment in favor of Leonid Marmelshtein's excessive force claim would not necessarily imply that his no contest plea to disorderly conduct was invalid. Moreover, even if his claim of excessive force arises from the same incident which gave rise to the no contest plea to disorderly conduct, such an accusation does not imply the invalidity of the plea. Excessive force under Michigan law is not a defense to disorderly conduct. In fact, Leonid Marmelshtein's claim of excessive force is more analogous to the illegal seizure claim in *Cummings* than to an excessive force claim.[7] Although

---

[7] The Defendants cite *Ryan v. Hazel Park* wherein a district court barred an excessive force claim by the plaintiff who had a prior conviction of resisting arrest and assault arising out of the same incident. *Ryan v. Hazel Park,* 2007 U.S. Dist. LEXIS 29237,* 6, 12 (E.D. Mich.

8

a favorable judgment in his favor could imply the invalidity of the no contest plea, it does not necessarily do so. Therefore, the Defendants' invitation to apply the *Heck* doctrine must be rejected.

E.

In determining whether the actions by a government official are protected by qualified immunity, the Court is directed to consider whether (1) the facts, when taken in the light that is most favorable to the plaintiff, allege a constitutional violation, and (2) a constitutional right was so "clearly established" that the defendants should have reasonably known that they were violating the plaintiff's constitutional rights. *Saucier v Katz*, 533 U.S. 194, 201-02 (2001); *Gregory v. Louisville*, 444 F.3d 725, 745 (6th Cir. 2006). In conducting this analysis, the court has the discretion of deciding the order in which to make the initial inquiry. *Pearson v. Callahan,* 129 S. Ct. 808, 815-16 (2009). Qualified immunity is a question of law which must be decided by the court. Thus, the moving party bears the burden of demonstrating that the opposition is not entitled to such immunity. *Pray v. City of Sandusky*, 49 F.3d 1154, 1157 (6th Cir. 1995); *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

In order to find a clearly established constitutional right, the court must look for directives from the Supreme Court and the Sixth Circuit or for guidance from its own decisions. *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 972 (6th Cir. 2004); *See also Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). Although a few opinions from other circuit or district courts are not enough to form the basis for a clearly-established constitutional right

---

2007); *but see Swiecicki*, 463 F.3d at 504; *Bobo v. City of Pontiac*, 2008 WL 1882705, 6 (E.D. Mich. 2008) (plaintiff's claim of excessive force was not precluded despite earlier conviction for resisting arrest and obstructing justice).

within the Sixth Circuit, a clearly-established constitutional right in "extraordinary cases" may be based upon decisions from other courts. *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir. 1988). Such decisions must "point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Id.*

"Novel factual circumstances, however, do not automatically require a finding of qualified immunity." *St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Previous cases do not have to be "fundamentally similar" for a law enforcement officer to be on notice. *Hope,* 536 U.S. at 741. Rather, the critical question is whether, on the basis of the factual context and general reasoning of previous case law, the officer was put on notice that his conduct was clearly unlawful. *St. John*, 411 F.3d at 774.

Government officials are shielded from liability if they act under the objectively reasonable belief that their actions are lawful. *Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982). When judging the objective reasonableness of claimed misconduct, courts must adopt the perspective of an on-scene policeman and may not use 20/20 hindsight in making its assessment. *Graham v. Connor*, 490 U.S. 386, 396 (1989). If a law enforcement official mistakenly uses excessive force under circumstances that are subsequently determined to be reasonable, the officer is entitled to the protection of qualified immunity. The Supreme Court in *Saucier, supra,* reasoned that "officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is

10

necessary in a particular situation." *Saucier*, 533 U.S. at 205 (quoting *Graham*, 490 U.S. at 397).

The Fourth Amendment right "always requires a balancing of a citizen's privacy interests and the state's interest in preventing or solving crime." *St. John*, 411 F.3d at 775. Therefore, excessive force is determined by the facts and circumstances of each case, which require officers to take into account the potential risk of violence or flight by the suspect, the seriousness of the suspected crime, and whether the suspect is actively resisting arrest. *Id.* at 774 (citing *Graham*, 490 U.S. at 394).

Whereas no specific right has been clearly established against the use of "flash-bang" grenades, the Fourth Amendment clearly establishes the right to be free from excessive force. *Champion v. Outlook,* 380 F.3d 893, 902 (6th Cir. 2004).[8] Therefore, reasonable officers may or may not know if their use of such a device (i.e., "flash-bang" grenades) is excessive and unconstitutional, depending upon the facts and circumstances of each case. *See, e.g., Bing*, 456 F.3d at 570; *see also Dawkins*, 83 Fed. Appx. at 51 ("the use of a 'flash-bang' [grenade] is 'neither per se objectively reasonable or unreasonable'").

In the case at bar, the officers are not entitled to qualified immunity because the particular type of force which is alleged to have been utilized in this case was excessive,

---

[8]Although the Defendants rely heavily on *Bing* to argue that the application of "flash-bang" devices do not necessarily constitute the violation of a clearly-established right, the facts in this cited case are inapposite to the matter before the Court. In *Bing*, the court found that the police were entitled to qualified immunity for deploying a "flash-bang" grenade in a situation wherein a suspect had previously fired his gun, posed an immediate threat to the police and neighbors, and refused to leave his house. *Bing*, 456 F.3d at 570. Here, there was no evidence that (1) the Plaintiffs' possessed the possession of any weapons, (2) any of the occupants of the home had a history of violence, or (3) the occupants refused follow the Defendants' command to evacuate their home.

especially when this evaluation is considered in a light that is most favorable to the Plaintiffs. The information which was relied upon by the Defendants was marginal at best and reflected a minimal, if any, pre-raid assessment of the risk of potential violence or flight by the Plaintiffs.

Furthermore, when the Court views the Plaintiffs' conduct during the post-home entry phase of the incident on December 13, 2004 as being correct for the purpose of the pending summary judgment motions, these facts strongly suggest that the risk of violence or flight, as well as any resistance to arrest, was minimal. *St. John*, 411 F.3d at 775.

If, as the Plaintiffs allege, the officers battered down the Plaintiffs' door and threw a "flash-bang" grenade without assessing the overall situation, their actions could be aptly described as being very dangerous to the lives and limbs of everyone who was involved in the incident. When viewing all of the facts in a light that is most favorable to the Plaintiffs, the Court concludes that no reasonable law enforcement officer would have considered a confused elderly couple to be capable of producing the kind of tense and rapidly evolving uncertain situation which would require ten police officers to make split-second decisions including the use of two "flash-bang" grenades. *Saucier,* 533 U.S. at 205.  When accepting the Plaintiffs' allegations as being true for the purpose of the pending dispositive motions, the Court has determined that the facts and circumstances in this case are such that a reasonable officer should not have considered the act of utilizing a "flash-bang" device as an objectively permissible measure to accomplish its mission.

Moreover, if the Plaintiffs' accusations are to be believed, the situation before this Court appears to be an "extraordinary case" in which the officers should have had no doubt in their minds that their law enforcement actions would violate a constitutional right. *Seiter*, 858 F.2d

at 1177. The record in this case suggests that the officers were unaware of (1) the presence of any weapons within the Plaintiffs' household, (2) any potential threats of bodily harm or violence, and (3) any person in the house who had been convicted of a violent crime. *Compare, Boyd v. Benton County*, 374 F.3d 773, 779 (9th Cir. 2004) (despite police awareness that suspect had criminal record of aggravated assault and access to weapons, police acted unreasonably when they threw "flash-bang" device without looking inside house or giving warning to the interior suspect).[9] Moreover, in *United States v. Jones*, 214 F.3d 836, 837 (7th Cir. 2000), Judge Easterbrook wrote that "police cannot automatically throw a bomb into drug dealers' houses, even if the bomb goes by the euphemism 'flash-bang device.'"[10] In the instant case, the Plaintiffs were never suspected of participating in any drug trafficking - only in the possession of marijuana.

Under the circumstances of this case, it is quite possible or probable for a reasonable jury to conclude that the officers used excessive force when they employed two "flash-bang"

---

[9] Further, in those situations in which the use of "flash-bang" grenades has been found to be reasonable, it has largely been in cases wherein the suspect was armed and with a previous criminal record. *See, e.g., Dawkins,* 83 Fed. Appx. at 51 (finding reasonable use of "flash-bangs" where police knew suspect had assault rifle capable of firing bullets that could penetrate bullet-proof vests, but warning that the use of this device could be unreasonable); *United States v. Myers*, 106 F.3d 936, 940 (10th Cir. 1997) (finding reasonable use of "flash-bang" devices where suspect had history of drug trafficking, fire bomb related prior conviction, and well known marijuana-growing operation); *Kirk v. Watkins*, 182 F.3d 932 (table), 1999 WL 381119, at *3 (10th Cir. June 11, 1999) (finding reasonable use of "flash-bang" grenade where suspect with loaded weapon had threatened to kill police officers); *see also, Molina v. Cooper*, 325 F.3d 963, 973 (7th Cir. 2003).

[10] In *Jones*, the court questioned the reasonableness of the decision by police officers to use a "flash-bang" grenade in the home of a known drug dealer where children were known to be present. Ultimately, evidence of the officers' use of this law enforcement device was admitted under the "inevitable-discovery" doctrine despite the drug dealer's criminal record of weapons offenses.

devices against the Plaintiffs. Although neither the Supreme Court nor the Sixth Circuit has "clearly established" that the Plaintiffs have a general right not to endure "flash-bang" grenades, this Court believes that the officers should have been aware that residents within their home in Southfield had a lawful right to be free from excessive force. *Champion,* 380 F.3d at 902.

If these officers were mistaken as to their use of excessive force, their error was not reasonable. The state interest in fighting the criminal act of possessing marijuana does not outweigh a citizen's privacy interests which would allow police officers to enter a dwelling under the facts of this case.

For all of these reasons, the Court rejects the Defendant Officers' claim of qualified immunity.

### III.

"A municipality cannot escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 365 (6th Cir. 1993); *see also Barber v. City of Salem, Ohio*, 953 F.2d 232, 238 (6th Cir. 1992). On the other hand, a municipality may not be held liable under § 1983 simply because its policy, custom, or practice could have authorized the use of excessive force. To the contrary, an aggrieved party must actually suffer a constitutional injury. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Bowman v. Corrections Corporation of America*, 350 F.3d 537, 546 (6th Cir. 2003).

Here, even if the Court had been inclined to find that the officers who participated in the execution of the search warrant were entitled to qualified immunity, a reasonable jury could find the City of Southfield to be liable for the Plaintiffs' claimed injuries because of the excess

14

force that was employed by its officers. As a result, the City of Southfield is not entitled to a summary judgment. *Garner*, 8 F.3d at 365.

Yet, in order for the City of Southfield to be held liable, its customs, policies, practices must have been "the moving force" which caused the claimed constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). In order for a municipality to be liable, the aggrieved parties - such as the Plaintiffs in this case - must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner*, 8 F.3d at 364; *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). Furthermore, if a practice of a municipality is "so well settled as to constitute a 'custom or usage' with the force of law," a plaintiff's suit may proceed despite the absence of a written authorization or an express policy. *Monell*, 436 U.S. at 691.

A single constitutional violation is insufficient to impose liability unless there is proof that the violation was caused by an existing unconstitutional policy which can be attributed to a municipal policymaker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). Otherwise, the existence of the unconstitutional policy must be proved separately. *Id.* If the policy itself is not unconstitutional, more proof than a single incident will be necessary "to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Id*. Furthermore, the failure to train can only be considered a policy or custom that is actionable under §1983 if it shows a "deliberate indifference" by the municipality to the rights of its citizens. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

A review of the facts in a light that is most favorable to the Plaintiffs reveals that they

15

have shown the existence of genuine issues of material fact which pertain to their claims of constitutional deprivations due to the policies and customs of the City of Southfield. *Celotex,* 477 U.S. at 322-24. First, the Plaintiffs have created a genuine issue regarding whether either or both of them suffered a constitutional violation which may have arisen from the officers' alleged (1) failure to knock and announce before entering the house in Southfield, and (2) use of excessive force, as discussed above.

The Plaintiffs have also demonstrated a genuine question of a material fact as to whether the City of Southfield had an unwritten policy which authorized the routine use of "flash-bang" devices without initially obtaining sufficient pre-raid information.[11] In their opposition pleadings, the Plaintiffs have provided more than a "mere scintilla of evidence" when they cited to the depositions of multiple individual officers who conducted the raid on their residence. *Anderson*, 477 U.S. at 252.

Through these depositions, the Plaintiffs have also established the existence of a genuine issue of material fact as to whether the City of Southfield had an unwritten policy regarding the deployment of "flash-bang" grenades that had the potential of causing a constitutional violation. The Plaintiffs have demonstrated that the City of Southfield's only policy for the use of "flash-bang" devices is vague; i.e., evaluations are made on a case-by-case basis without any readily apparent standard or criteria. Thus, these policies and practices could have caused the officers to deploy "flash-bang" devices when they were unnecessary and excessive.

When these facts are taken in a light that is most favorable to the Plaintiffs, a reasonable

---

[11] Appellate courts outside of the Sixth Circuit have noted their concern that a routine use of flash-bang devices as a standard operating procedure runs "the risk of violating the Fourth Amendment." *Kirk v. Watkins*, 182 F.3d 932 (table), 1999 WL 381119, at 4 (10th Cir. 1999).

jury could find that the City of Southfield maintained a policy of routinely and indiscriminately deploying "flash-bang" grenades without obtaining proper information prior to the execution of a raid. *See Garner,* 8 F.3d at 364. Therefore, the City of Southfield is not entitled to a summary judgment.

IV.

For all of the reasons stated above, the Defendants' motions for summary judgment are denied.

IT IS SO ORDERED

Dated: September 30, 2009                    S/Julian Abele Cook, Jr.
       Detroit, Michigan                     JULIAN ABELE COOK, JR.
                                             United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2009.

                                             s/ Kay Doaks
                                             Case Manager