UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONID MARMELSHTEIN and ARLENE
MARMELSHTEIN

    Plaintiff,

v.                  Case Number: 07-15063
                      Honorable Julian Abele Cook, Jr.

CITY OF SOUTHFIELD, et al.

    Defendants.

## ORDER

This case is based on claims by the Plaintiffs, Leonid and Arlene Marmelshtein, both of whom proclaim that their fundamental constitutional rights were violated by the Defendants, City of Southfield (Michigan) and their representatives. Now pending before the Court is the motion for the entry of a summary judgment by the City of Southfield.

I.

During the late afternoon hours of December 13, 2004, City law enforcement officers traveled to the Marmelshteins' home for the purpose of executing a search warrant. The events, which followed their arrival, appear to be in sharp dispute. According to the Plaintiffs, these officers broke down their front door with a battering ram without announcing their presence. This version is challenged by one of the identified officers, Jeffrey Jagielski, who maintains in his deposition that he knocked and announced the law officers' presence, and waited for approximately five or ten

1

seconds before using a battering ram in order to gain entry into the Plaintiffs' residence. After the door was rammed open, a second officer, Christopher Swart, asserts that he looked inside of the home, and believing it to be empty, threw in a "flash-bang" grenade. One of the Plaintiffs, Arlene Marmelshtein, proclaimed that - contrary to the officers' representations - she was inside her home when this grenade was thrown. The loud noise, which was attributed to the explosion, caused her to seek safety and shelter through the rear door of their home. Contemporaneously with her effort to exit her home, an unidentified officer threw a second "flash-bang" grenade near her. She was met by other officers who halted her attempted exit and, thereafter, brought her back into the house.

Meanwhile and during the confusion and excitement of the moment, the other Plaintiff, Leonid Marmelshtein, states that he put his hands up in the air, in a symbolic gesture of a surrender. However, Jagielski testified in his deposition that when Leonid Marmelshtein, who had been instructed by him to "get down" did not immediately comply with this directive, it became necessary to force him onto the floor at gunpoint. At this point, a third officer, Gary Lask came to assist Jagielski in a follow-up handcuffing procedure. In his recounting of this incident, Leonid Marmelshtein, asserts that these officers beat him and caused him to sustain facial bruising.

On September 30, 2009, this Court denied the Defendants' first motion for summary judgment. In addressing the City's liability, this Court held that "[A] reasonable jury could find that the City of Southfield maintained a policy of routinely and indiscriminately deploying 'flash-bang' grenades without obtaining proper information prior to the execution of a raid."

The Defendants appealed. On May 3, 2011, the Sixth Circuit dismissed (1) the failure to knock and announce claim as to all of the individual Defendants except Officer Jagielski; and (2) the excessive force claim, as to all of the individual Defendants except Officers Jagielski and Lask.

2

The Sixth Circuit granted qualified immunity to all individual Defendants on the flash-bang claims after finding that the Plaintiffs' right to be free from the use of flash-bang grenades under these circumstances was not "clearly established" at the time. The Sixth Circuit did not determine whether there had been a constitutional violation. Accordingly, it declined to exercise pendent appellate jurisdiction over the Plaintiffs' municipal liability claim against the City and dismissed the City's appeal.

In its now-pending motion for summary judgment, the City contends that the Plaintiffs have failed to identify and connect an existing policy, custom, or practice of this municipality to the alleged constitutional violations.

## II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be

3

drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

III.

A municipality is liable under 42 U.S.C. § 1983 if the acts that allegedly violated an individual's constitutional rights were undertaken on the basis of at least one of its municipal policies, practices, or customs. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality cannot be held liable if the individual law enforcement officers are not liable for a constitutional violation. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The complaints against

the City and its law enforcement officers are for (1) their failure to employ a "knock and announce" procedure prior to the forcible entry into the Plaintiffs' home, and (2) an excessive use of force while executing the challenged search warrant, including (a) the application of the two "flash-bang" grenades and (b) the allegedly harsh treatment of Leonid Marmelshtein during the post-entry into their residence.

The City contends that the Plaintiffs can neither identify nor connect a policy, practice, or custom as the moving force behind the claimed constitutional violations. Thus, they believe that a summary judgment should be entered in their favor on this issue. In support of this position, the City points to (1) the training material and policies that were disclosed to the Plaintiffs during the discovery period, and (2) the "SWAT" training that officers Jagielski et al received prior to the now-challenged raid.

In *Monell*, the Supreme Court opined that "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id*., 436 U.S. at 690-91. A custom is a widespread practice that is so permanent and well-settled as to carry the force of law. *Id* at 691.

With regard to the "knock and announce" issue, the facts herein are sufficiently unsettled, to such an extent that there exists a genuine question of a material fact as to whether the identified law enforcement officers knocked and announced their presence prior to the raid. The Plaintiffs have testified in their depositions that they did not hear any knock or announcement. However, Jagielski's recollection of the events in question are quite different. (Pls. Resp. Ex. 12, Jagielski Dep.at 23). Additionally, Lieutenant John Fisher testified that it is the custom of the Southfield Police

5

Department is to ram open the door within as few as one to two seconds under certain circumstances. (Pls. Resp. Ex. 31, Fisher Dep. p. 38).

The Sixth Circuit has long recognized that "it is clearly established law that the [F]ourth [A]mendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996) (internal quotations omitted). Officers must knock and announce their presence prior to executing a search warrant. *Wilson v. Arkansas*, 514 U.S. 927, 931-32 (1995). They must also wait a reasonable period of time before forcing their way into a home. *U.S. v. Pinson*, 321 F.3d 558, 566 (6th Cir. 2003). Failure to knock and announce, or to provide a reasonable opportunity for the occupants to respond, in the absence of exigent circumstances, will violate the Fourth Amendment. *U.S. v. Dice*, 200 F.3d 978, 982 (6th Cir. 2000).

Based on the facts presented, the Court believes that a jury could reasonably conclude that the City had an unwritten policy of not knocking and announcing their presence at all, or knocking and entering with such immediate timing that renders the alleged "knock" virtually meaningless. Still further, the jury could reasonably conclude that (1) the City had a unwritten policy of this practice, and (2) this was the moving force behind the claimed violation of the "knock-and announce" requirement at the Plaintiffs' home.

With respect to the excessive force claims, the City argues that the use of distraction devices did not violate the Fourth Amendment which, in turn, nullifies the Plaintiffs' claim of liability. The Sixth Circuit determined that the individual officers were entitled to qualified immunity on the "flash-bang" claims because the Plaintiffs' right to be free from the use of these devices at a time that had not been "clearly established" by law. However, the Sixth Circuit explicitly and

6

significantly declined to determine whether a constitutional right had been violated. Furthermore, there are several other genuine issues of material facts that require a determination as to whether a constitutional right was improperly impacted by the City et al: whether (1) Jagielski knocked and announced the officers' presence prior to their entry into the Plaintiffs' home, (2) the officers were unreasonably excessive in their deployment of the two "flash-bang" grenades, and (3) the officers employed unreasonably excessive force against Leonid Marmelshtein. These material questions of fact preclude the entry of a summary judgment on the excessive force issue.

The City further submits that - prior to the entry of the officers into the Plaintiffs' home - it had maintained an appropriate policy for the training, investigation, and discipline of its officers regarding the use of force, including the application of "flash-bang" grenades. However, there is other evidence upon which a jury could reasonably rely to conclude that the City's customs and practices regarding the use of force produced the alleged violations of the Plaintiff's Fourth Amendment rights. For instance, there is deposition testimony from the Defendant officers who indicated that the Southfield Police Department had a practice of using "flash-bang" weaponry without first requiring its law enforcement officers to gather relevant information upon which to assess the need or the appropriateness of their use. (Pls. Resp. Ex. 13, Lask Dep. pp. 32-33, 43; Ex. 15, Kinal Dep. pp. 26-7; Ex. 16, Dickey Dep. p.24; Ex. 21, Literacki Dep. pp. 11-13). There is also evidence of the frequent usage of "flash-bang" grenades by the City's Police Department without the necessity of requiring appropriate documentation prior to their use. (Pls. Resp. Ex. 11, pp. 17-8, Ex. 31, p. 34, 64).The absence of a written policy in the face of a known risk of harm can be evidence of a policy of deliberate indifference to a person's constitutional rights. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) (lack of written policy, coupled with evidence

of municipal practice which produces constitutional violation, supports finding of deliberate indifference and municipal liability.). Based on this evidence, a jury could reasonably conclude that there was a practice of deliberate indifference by the City which caused the alleged constitutional violations.

Finally, with respect to the Plaintiffs' "failure to train" allegation, the City claims that there is no evidence to support this argument. However, the Court notes that the City (1) has failed to produce any discovery material which is pertinent to this claim, and (2) has been sanctioned by this Court for this failure to produce. Furthermore - as noted above - the deposition testimony of the Defendant officers raises questions of fact regarding the type and extent of the training that was received by them on the use of battering rams and "flash-bang" grenades. There are a multitude of other fact questions that preclude the entry of a summary judgment.

For the reasons that have been stated, the City's motion for summary judgment is denied in its entirety. (ECF 174).

IT IS SO ORDERED.

Date: February 12, 2013                         s/Julian Abele Cook, Jr.
                                                JULIAN ABELE COOK, JR.
                                                United States District Judge

### Certificate of Service

I hereby certify that on February 12, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                s/ Kay Doaks
                                                Case Manager